NATIONAL ZINC COMPANY, INC., and
Insurance Company of North
America, Petitioners,

v.

Ernest R. DEWITT and the State
Industrial Court, Respondents.

No. 49793.

Supreme Court of Oklahoma.

Jan. 24, 1978.

Best, Sharp, Thomas & Glass, Jack D. Crews, Tulsa, for petitioners.

John Estes, Stipe, Gossett, Stipe & Harper, Oklahoma City, for respondent.

Fred Nicholas, Jr., Oklahoma City, for respondent, State Ins. Fund.

IRWIN, Justice.

Petitioners seek review and vacation of an order awarding claimant 40% additional compensation for permanent disability to the body as a whole based upon a change of condition for the worse. Petitioners' first contention challenges the sufficiency of the evidence to sustain the award. Petitioners argue the medical evidence will not support a 40% increase in claimant's permanent disability but only a 20% increase.

Prior to the present proceedings claimant had filed his claim for disability resulting from an occupational disease caused by exposure during employment with National Zinc. Claimant relied upon the medical report of Dr. M.T.B. who evaluated his disability at 80%. This claim was settled (Form 14 Agreement) on May 19, 1971, for 30% permanent partial disability to the body as a whole.

Claimant continued his employment with National Zinc and on November 15, 1974, Dr. M.T.B. re-examined claimant and submitted his supplemental report to the previous 1971 report. In the November, 1974, report Dr. M.T.B. was of the opinion that claimant's condition had changed for the worse since 1971 and that he was 100% permanently disabled. Since Dr. M.T.B. was of the opinion that claimant was 80% disabled in 1971 and 100% disabled in 1974, petitioners argue that any additional disability based upon Dr. M.T.B.'s reports could not exceed the mathematical difference in his reports, i. e., 20% (100% − 80%)

and the 40% additional disability award was erroneous. Petitioners rely upon *Cherokee Togs v. Briggs,* Okl., 444 P.2d 208 (1968); and *Eastern Material Co. v. Robinson,* Okl., 474 P.2d 135 (1970).

In the *Cherokee Togs* case medical evidence which evaluated claimant's permanent partial disability at 35% was the basis for an award for 10% permanent partial disability. In the proceeding to re-open on a change of condition, the same doctor who had previously evaluated claimant's disability at 35% evaluated it at 45%. We vacated a 25% additional award for change of condition on the theory that the only medical evidence submitted indicated that claimant's disability had increased no more than 10%. Although admittedly determinable on other grounds the reasoning in *Cherokee Togs* was adopted as authority for vacating an award for change of condition in the *Eastern Material* case, supra.

■ In examining the *Cherokee Togs* case it appears this Court construed the medical evaluation in the original proceeding as determinative of the extent of disability. As will be later discussed, this is clearly erroneous because the extent of disability resulting from an accidental injury is the disability determined by the State Industrial Court within the limits expressed by competent medical evidence. It is this adjudication which determines the extent of disability for which compensation is awarded, and not the physician's medical evaluation. Also, extending *Cherokee Togs* to its ultimate conclusion could result in an illogical interpretation of our Workmen's Compensation Laws because we, in effect, held that a physician's evaluation of claimant's disability received in evidence in a proceeding to re-open on a change of condition is limited in its effect to the percentage by which his subsequent evaluation exceeds that given in a prior proceeding. In other words, under *Cherokee Togs,* if a physician evaluated claimant's disability at 100% in a prior proceeding and the trial tribunal adjudicated the disability at 50%, a subsequent evaluation by that physician would not support an award for additional compensation

for change in condition unless such evaluation evaded or went beyond the operative effect of *Cherokee Togs.* In our opinion, *Cherokee Togs* should be re-examined.

85 O.S.1971, sec. 28, provides that upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Court may at any time review any award, and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded.

In *Armco Steel Corp. v. State Industrial Court,* Okl., 567 P.2d 99 (1977), we held that Rule 23 of the State Industrial Court requires that a motion for change of condition for the worse must be supported by the report of (1) attending or examining physician at the time of making the last award; or (2) a physician who had knowledge of claimant's condition at time of the last award; or (3) a physician whose examination and report showing a change of condition for the worse is based upon and includes facts definitively enumerated in *Bryant-Hayward Drilling Company v. Cook,* Okl., 483 P.2d 1131. In *Bryant-Hayward* we said:

"Although it is not absolutely necessary to state in categorical language that claimant has sustained a change of condition from the last hearing it is necessary to indicate in some manner, by objective findings, tests, examinations, by new findings of conditions which had not existed at the prior hearing or findings of conditions which have worsened subsequent to the last hearing, that there has been some change in the condition of the claimant for the worse."

■ A long standing rule declares that on a motion to reopen on the ground of a change in condition, the burden is on the claimant to prove: first, the change of condition, and second, that the change of condition was the result of an original compensable injury. Evidence necessary to establish those requirements is of a nature which must be proved by testimony of skilled professional persons. *Williams Bros. v. State Industrial Commission,* 158 Okl. 171, 12 P.2d

896 (1932). Another settled rule is that the State Industrial Court's adjudication of a physical condition is final as to the condition then existing, but is not final in so far as it predicts the future course of the injury when something new appears showing a different condition. *Southern Drilling Co. v. Daley,* 166 Okl. 33, 25 P.2d 1082 (1933).

It necessarily follows that when the award in the instant proceeding was settled in May, 1971, for 30% permanent partial disability to the body as a whole, that settlement established claimant's disability under Workmen's Compensation Laws at that time. Although there was medical evidence tending to establish that claimant was 80% disabled, as disclosed by the report of Dr. M.T.B., claimant was only 30% disabled under the Workmen's Compensation Law.

In *Spartan Aircraft Company v. Stockton,* Okl., 370 P.2d 13 (1961) claimant was awarded additional disability based on a change of condition for the worse. There, the petitioner-employer argued that at the prior hearings claimant testified that as a result of the injury he was unable to perform manual labor; that the doctors who gave testimony in claimant's behalf so testified at the prior hearings and further testified that claimant was permanently and totally disabled; and that identical testimony was given by claimant and doctors at the last hearing. Therein we said:

"In *United States Gypsum Co. v. Pendleton et al.,* Okl., 340 P.2d 467, 468, the employer advanced the same argument that petitioner here makes. In rejecting same this was said:

"Petitioner argues claimant and his doctor both testified in the original hearing that claimant was unable to perform any work, and therefore the evidence shows no change in condition. Petitioner cites *Barnsdall Oil Co. v. State Industrial Commission,* 178 Okl. 289, 62 P.2d 1031; *Deep Rock Oil Corp. v. Evans,* 167 Okl. 66, 28 P.2d 7, and other cases. As pointed out in *Indian Territory Illuminating Oil Co. v. State Industrial Commission,* 185 Okl. 72, 90 P.2d 398; *Stanolind Pipeline Co. v.*

*Brewer,* 185 Okl. 578, 95 P.2d 625, these cases have no application to a proceeding to reopen on change in condition where there is competent evidence introduced to show that a prior permanent partial disability has changed for the worse and that such change is due to the original accidental injury and has occurred since the date of the prior award. *The fact that the doctor or claimant testified in the hearing on a former order or award that claimant could do no work does not prevent testimony by either the doctor or claimant as to a change in condition. Nor does it preclude the Commission from considering testimony on change in condition and accepting and believing the testimony of the doctor or claimant tending to establish a change in condition. Indian Territory Illuminating Oil Co. v. State Industrial Commission,* supra; *Stanolind Pipe Line Co. v. Brewer,* supra. * * *"* (emphasis ours)

An examination of *Spartan* shows that it is in conflict with *Cherokee Togs* and *Cherokee Togs* in effect overruled *Spartan.* However, *Spartan* was not discussed in the majority or the specially concurring opinion in *Cherokee Togs* although the dissenting opinion directed attention to it. On re-consideration of the issues presented we hold that *Spartan* correctly states the law and we specifically overrule *Cherokee Togs, Eastern Material Company* and cases of similar import in so far as they are in conflict with our decision here.

■ We hold that a physician's evaluation of claimant's disability submitted in a proceeding to re-open based upon a change of condition for the worse, is not limited in its effect to the mathematical difference by which it exceeds that physician's evaluation submitted in a prior proceeding.

■ Applying the above rule in the case at bar, Dr. M.T.B. evaluated claimant's disability at 80% in 1971, and the claim was settled for 30%. In the 1974 proceeding to re-open, Dr. M.T.B.'s supplemental report placed claimant's disability at 100%. This supplemental report evaluating claimant's

disability at 100% is not limited in its effect to the 20% mathematical difference between it and the 80% evaluation in 1971.

We hold the award for 40% additional disability based upon a change of condition for the worse, is sustained by competent evidence.

Another issue presented relates to insurance coverage. On July 31, 1974, petitioner, Insurance Company of North America (INA) terminated its insurance coverage with National Zinc Company and such coverage was assumed by the State Insurance Fund, effective August 1, 1974. On hearing claimant's motion to re-open, INA moved to implead State Insurance Fund on the grounds that State Insurance Fund, and not it, would be liable for any additional compensation benefits.

The trial tribunal denied INA's motion to implead Fund as an insurance carrier on the grounds that the period of exposure after Fund assumed the coverage was so slight it couldn't be properly determined.

INA contends that 85 O.S.1971, sec. 11(3) places the insurance liability upon Fund which assumed the coverage effective August 1, 1974, and the trial tribunal erred in failing to implead Fund.

85 O.S.1971, sec. 11(3) provides:

"Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall alone be liable therefore, without right to contribution from any prior employer or insurance carrier, * * *."

The above statute expressly rejects the idea that there is statutory authority for contribution or apportionment between two insurance carriers where one has terminated its coverage and another has assumed that coverage. Since the State Industrial Court does not have the statutory or equitable authority to order contribution or apportion the liability,[1] and Fund is not a party in these proceedings, the issue presented is whether liability was properly imposed upon INA.

In considering sec. 11(3), supra, in connection with 85 O.S.1971, sec. 28, which relates to change of condition, we hold that if claimant's change of condition for the worse was the result of the original injury and claimant had not been "injuriously exposed to the hazards of such disease" after INA's insurance coverage terminated on July 31, 1974, INA would be liable for the insurance coverage. However, INA's liability may not be further extended to include increased disability if claimant were "injuriously exposed to the hazards of such disease" after INA's insurance coverage terminated. Such extension would be contrary to the expressed legislative intent in that it would make an insurer liable for disability due to injurious exposure occurring after the risk coverage ceased to be effective.

If claimant were "last injuriously exposed to the hazards of such disease" after INA's insurance coverage terminated on July 31, 1974, claimants increased disability, is within the purview of sec. 11(3), and should be treated as a separate injury solely for the purpose of identifying the

---

1. In *Cities Service Gas Company v. Witt*, Okl., 500 P.2d 288 (1972) it was argued the State Industrial Court had the authority to extend its jurisdiction and apply equitable estoppel without regard to the provisions of the Workmen's Compensation Act. In disposing of this argument we said that the Industrial Court is a statutory tribunal of limited jurisdiction and has only such jurisdiction as is conferred by law and its jurisdiction may not be expanded by agreement, waiver or conduct.

In *Pine, Adm'r v. Davis*, 193 Okl. 517, 145 P.2d 378 (1944) we said the State Industrial Court is a purely statutory tribunal of limited jurisdiction, that the Workmen's Compensation Act is complete, comprehensive, and exclusive in the field in which it operates and provides the relief to be afforded and the method to be employed in the administering thereof; and the jurisdiction conferred on the State Industrial Court is to be ascertained by reference to the Workmen's Compensation Act and not by resort to common law rules.

It is evident that neither the common law rules nor equitable principles may be applied to enforce or defeat a claim under the Workmen's Compensation Act.

proper insurer; and, liability for the increased disability should be imposed upon the insurance carrier whose coverage was in effect at the time claimant was "last injuriously exposed to the hazards of such disease." This is in harmony with the expressed legislative intent that the insurer on the risk when claimant "was last injuriously exposed to the hazards of such disease" shall be liable.

In short, 85 O.S.1971, sec. 11(3), is applicable in instances where benefits have been awarded for an occupational disease and claimant thereafter seeks additional compensation based on a change of condition for the worse, and sec. 11(3) mandates that no insurer may be held liable for any portion of increased disability where claimant is "last injuriously exposed to the hazards of such disease" after the insurer's policy expired.

The record discloses that claimant continued his employment with National Zinc after the original award in 1971, and moved up closer to the furnace in 1972 and continued in that position until he retired in 1975. Every day there were gas fumes and dust in the air and he worked within three feet of the hot furnace. Claimant testified that he started having dust chills in 1974, but the time of year is not disclosed.

Since the trial tribunal, in effect, failed to consider whether claimant was "last injuriously exposed to the hazards of such disease" after INA's insurance coverage terminated, and there is evidence that might tend to establish that claimant was "injuriously exposed" after such termination, the award against INA must be vacated.

The award against INA is vacated and the cause is remanded for further proceedings.

We specifically omitted discussing the duties and liabilities of Fund for the simple reason Fund was not a party.

Award sustained in part; and vacated in part with directions.

LAVENDER, V. C. J., and WILLIAMS, BARNES, SIMMS and DOOLIN, JJ., concur.

BERRY, J., dissents.