**POOR RICHARD INN,**
**Employer–Appellant,**

v.

**Emma V. LISTER, Employee–Appellee.**

Supreme Court of Delaware.

Submitted May 16, 1980.

Decided Aug. 20, 1980.

Stephen P. Casarino, Wilmington (argued), for employer–appellant.

Oliver V. Suddard, Wilmington (argued), for employee–appellee.

Before McNEILLY, QUILLEN and HORSEY, JJ.

HORSEY, Justice:

This workmen's compensation appeal concerns the Industrial Accident Board's authority under 19 *Del.C.* § 2347 to increase

an injured employee's disability benefits on finding claimant's impairment to have increased over that previously fixed by agreement.

The question presented is whether the Board may make a new finding as to present degree of impairment, as the Board did, or whether it must base any increase in disability benefits on the percentage change from the previously agreed–upon impairment, as employer contends.

Employer appeals Superior Court's affirmance of the Industrial Accident Board's grant under 19 *Del.C.* § 2347 of an increase in permanent disability benefits to claimant Emma V. Lister based on the Board's determination of her "new" percentages of bodily impairment, with credit given for amounts paid under the prior settlement. Employer contends that § 2347 does not permit the Board to substitute new findings of impairment for prior agreed–upon impairments but only to award increased compensation benefits expressed in terms of the percentage change from the old. We disagree and therefore affirm.

## I

In 1974, claimant, Emma V. Lister, suffered serious injuries in an industrial accident. After filing claims for permanent disability, a settlement was reached by the parties and approved by the Board pursuant to 19 *Del.C.* § 2344.[1] The settlement represented a compromise of conflicting medical opinions as to the degree of permanent impairment of the various portions of her body, as follows:

### 1974

|  | Dr. A | Dr. B | Settlement |
|---|---|---|---|
| Neck | 20% | 17% | 18.5% |
| Back | 50% | 41% | 45.5% |
| Left Arm | 25% | 4% | 14.5% |
| Right Arm | 25% | 0 | 12.5% |
| Left Leg | 50% | 25% | 37.5% |
| Right Leg | 50% | 25% | 37.5% |

1. 19 *Del.C.* § 2344 provides that an agreement as to compensation approved by the Board shall be "final and binding unless modified as provided in § 2347 ...."

In 1977, Lister petitioned the Board under 19 *Del.C.* § 2347 for an increase in permanent disability benefits, claiming that her percentage of disability had increased since the 1974 settlement award. In a contested hearing, the same physicians who had previously examined Lister testified. Dr. A, a neurosurgeon and Lister's attending physician, testified that Lister's permanent impairment had increased as to various portions of her body, except her left arm. Dr. A expressed his findings as to Lister's present impairment as follows:

|  | 1978 |
|---|---|
| Neck | 30% |
| Back | 70% |
| Left Arm | 0 |
| Right Arm | 40% |
| Left Leg | 70% |
| Right Leg | 70% |

Dr. B[2] expressed Lister's present disability in terms of an 80% impairment of the whole person but would not give a breakdown such as Dr. A did as to her individual impairments. Dr. B was not certain that Lister's disability had increased though he thought it was a possibility.

The Board accepted the testimony of Lister and Dr. A that claimant's permanent disability had increased and found Lister's new percentages of impairment to be as follows:

|  |  |
|---|---|
| Neck | 30% |
| Back | 70% |
| Left Arm | "No increase" |
| Right Arm | 40% |
| Left Leg | 50% |
| Right Leg | 50% |

The Board directed that credit be given the employer for all amounts paid to Lister under the 1974 settlement–award.

## II

Employer concedes that there was evidence to support an increase in Lister's disability benefits. However, employer contends that the Board erred in not relating any 1978 increase in benefits to the

2. An orthopedic surgeon.

parties' 1974 impairment rating agreement, with any increased benefits based on an increase in the 1974 impairments. Thus, since Dr. A had previously determined Lister's neck impairment to be 20%, his current finding of 30% impairment represented a 10% increase in disability. As the parties had agreed in 1974 that Lister's neck impairment was 18.5%, claimant's new neck impairment should have been 28.5%, not 30%, as the Board found. Alternatively, employer contends that Lister's 1978 neck impairment should have been computed as follows:

$$\frac{20\%}{30\%} = \frac{18.5\%}{X} \text{ or } X = 27.75\%.$$

Employer contends that because § 2347[3] speaks in terms of authorizing the Board to "make an award ... increasing ... the compensation previously agreed upon or awarded," the Board must base any increased award on the degree of increase of present impairment over prior impairment. Employer thereby seeks to tie any increase in an award to a finding of degree of increase in impairment—which necessarily requires taking into consideration the prior settlement.

### III

While there may be logic in employer's argument that an increase in disability benefits should be related to a finding of degree of increase in impairment, the language of 19 *Del.C.* § 2347 does not mandate this approach.

Although the Industrial Accident Board has "only those powers given to it by the Legislature expressly or by implication," its authority under 19 *Del.C.* § 2347 is nevertheless broad. *Kent General Hospital v. Blanco*, Del.Supr., 195 A.2d 553 at 554 (1963). Further, it is the function of the

Board, and not that of a physician, to determine a claimant's disability—subject to the requirement that the Board's findings be based on substantial competent evidence. *Asplundh Tree Expert Co. v. Clark* Del. Supr., 369 A.2d 1084 (1975). However, the language of § 2347 does not even remotely suggest that the Board's authority under § 2347 to increase disability benefits is to be circumscribed by, and directly related to, a prior impairment finding or settlement.

While some support for employer's position may be found in 3 Larson, *The Law of Workmen's Compensation*, § 81.33 (1976), the authority is apparently sparse and split. *See Hopler v. Hill City Coal & Lumber Co.*, N.J.Supr., 5 N.J. 466, 76 A.2d 17 (1950); *contra: National Zinc Company, Inc. v. DeWitt*, Okl., 574 P.2d 300 (1978), overruling *Cherokee Togs v. Briggs*, Okl., 444 P.2d 208 (1968). In *DeWitt*, the Court held that, "a physician's evaluation of claimant's disability submitted in a proceeding to re–open based upon a change of condition for the worse, is not limited in its effect to the mathematical difference by which it exceeds that physician's evaluation submitted in a prior proceeding." (574 P.2d at 303). As our Superior Court noted in its unreported decision below, "the flaw in the *Briggs* case approach was amply demonstrated by the Court in *DeWitt* where *Briggs* was overruled":

"... if a physician evaluated claimant's disability at 100% in a prior proceeding and the trial tribunal adjudicated the disability at 50% a subsequent evaluation by that physician would not support an award for additional compensation for change in condition unless such evaluation evaded or went beyond the operative effect of *Cherokee Togs*." 574 P.2d 302.

On such review, the Board may make an award ending, diminishing, increasing or renewing the compensation previously agreed upon or awarded, and designating the persons entitled thereto, subject to this chapter, and shall state its conclusion of facts and rulings of law."

3. 19 *Del.C.* § 2347 provides, in pertinent part: "On the application of any party in interest on the ground that the incapacity of the injured employee has subsequently terminated, increased, diminished or recurred or that the status of the dependent has changed, the Board may at any time, but not oftener than once in 6 months, review any agreement or award.

We find the language of § 2347 sufficiently broad to permit the Board to determine whether to express a new impairment finding in terms of an increase (or decrease) over a prior impairment rating; but we find no language in the statute requiring the Board to do so. To adopt employer's inflexible approach would, in the words of the Court below, require that any "errors or compromises made in the original award or settlement ... be carried over into any findings made as a result of subsequent changes in condition."

We agree with the Court below that the Board's authority to revise compensation awards should not be so constricted; and clearly there was sufficient competent evidence before the Board to support its new findings as to Lister's present bodily impairment.

AFFIRMED.