# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

SAMUEL ELLIOTT,                              )
                                             )
    Claimant-Below/Appellant,            )
                                             )
    v.                                   )    C.A. No. N13A-08-008 DCS
                                             )
STATE OF DELAWARE,                           )
                                             )
    Employer-Below/Appellee.             )


Submitted: March 3, 2014
Decided: June 30, 2014


*On Appeal from a Decision of the Industrial Accident Board
of the State of Delaware –* **AFFIRMED.**


# OPINION


Ronald Stoner, Esquire, Ronald Stoner, P.A., Newark, DE, Attorney for Claimant-Below/Appellant Samuel Elliott

John J. Klusman, Esquire and Benjamin K. Durstein, Esquire, Tybout, Redfearn & Pell, Wilmington, DE, Attorneys for Employer-Below/Appellee State of Delaware


**STREETT, J.**

## Introduction

On February 2, 2007, Appellant Samuel Elliott ("Appellant"), a probation officer for the State of Delaware (the "Employer"), sustained injuries when he and the other members of a Probation and Parole team attempted to apprehend a fugitive. Pursuant to an agreement approved by the Industrial Accident Board (the "Board"), Appellant received temporary total disability compensation for the injuries that he sustained as a result of the 2007 work accident.

On July 12, 2010, Appellant filed a Petition to Determine Additional Compensation Due wherein he alleged permanent impairment to his brain, spine, smell, taste, and balance. On September 17, 2010, the Employer filed a Petition to Terminate Total Disability Benefits, alleging that Appellant was no longer totally disabled as a result of the 2007 work accident. A hearing on both Petitions was held on March 28, 2011.

On July 27, 2011, the Board issued a decision, granting Appellant's Petition, in part. The Board awarded Appellant compensation for seven percent permanent impairment to the spine and denied compensation as to the brain, smell, taste, and balance impairments. In addition, the Board granted the Employer's Petition to Terminate Total Disability Benefits and awarded Appellant partial disability as of the date of the decision. Appellant appealed the Board's decision.

On June 29, 2012, the Court reversed the Board's decision, in part, as to permanent impairment to the brain and remanded the matter to the Board for credibility findings regarding certain expert and non-expert witnesses. The Court also reversed and remanded the Board's decision as to Appellant's permanent balance impairment and termination of his total disability benefits, in the event that the findings on remand impacted the Board's prior decision. The Court affirmed the Board's decision as to permanent impairment to the spine, smell, and taste.

On March 26, 2013, the Board held a remand hearing.

On July 26, 2013, the Board made credibility findings regarding certain expert and non-expert witnesses and reaffirmed its prior decision to deny compensation for permanent brain and balance impairments and to terminate Appellant's total disability benefits.

Appellant has appealed the Board's decision on remand.

For the reasons set forth below, the Board's decision is affirmed.

### **Factual Background**

Relevant portions of the factual background from the Court's decision prior to remand[1] are summarized below:

---

[1] *See Elliott v. State*, 2012 WL 2553327 (Del. Super. June 29, 2012).

Appellant "was a competent member of a Probation and Parole team that operates in a SWAT-like fashion to apprehend escapees from the criminal justice system."[2]

On February 2, 2007, Appellant sustained injuries to his head, neck, right shoulder, and spine as his team attempted to apprehend a dangerous fugitive. He received ongoing treatment from "a series of physicians for pain, chronic headaches, memory loss, dizziness, balance impairment, and blurred double vision."[3]

**Procedural History**

On July 12, 2010, Appellant filed a Petition to Determine Additional Compensation Due with the Board and sought compensation for permanent impairment to his brain, spine, smell, taste, and balance as a result of the 2007 work accident. The Employer disputed causation.

On September 17, 2010, the Employer filed a Petition to Terminate Total Disability Benefits, alleging that Appellant was no longer totally disabled as a result of the work accident. Appellant had been receiving temporary total disability compensation for injuries that he sustained as a result of the 2007 work

---

[2] *Id.* at *1.

[3] *Id.*

4

accident, pursuant to an agreement that was approved by the Board on March 20, 2009.[4]

On March 28, 2011, a hearing before the Board was held. At the hearing, Michael Cocuzza (Appellant's supervisor), John Moyer (Appellant's partner), Appellant, Lisa Elliott (Appellant's wife), and Dr. John Dettwyler (Appellant's treating psychologist) each testified on Appellant's behalf. Appellant also presented the deposition testimony of Dr. Alan Fink (a neurologist and Appellant's medical expert) and Dr. Brian Shiple (Appellant's treating physician who specializes in family medicine and sports medicine).

In addition, the Employer presented the deposition testimony of Dr. Karl Rosenfeld (an orthopedic surgeon), Dr. William Sommers (a neurologist), Dr. James Langan (a neuropsychologist), and Dr. Wolfram Rieger (a psychiatrist).

The testimony of each of the aforementioned expert and non-expert witnesses is summarized in the Court's June 29, 2012 decision.[5]

The Board also heard testimony from Robert Stackhouse, who prepared a labor market survey and testified on the Employer's behalf.

On July 27, 2011, the Board granted Appellant's Petition to Determine Additional Compensation Due, in part, and awarded Appellant compensation for a

---

[4] *Elliott v. State*, Hearing No. 1298390, 2 (Indus. Accident Bd. Jul. 27, 2011) (hereinafter "Bd. Dec. at ____").

[5] *See Elliott v. State*, 2012 WL 2553327.

seven percent impairment to the spine. The Board found that Appellant did not prove, by a preponderance of the evidence, that he suffered permanent impairment to his brain, smell, taste, or balance and, accordingly, denied compensation as to those impairments. The Board granted the Employer's Petition to Terminate Total Disability Benefits and awarded Appellant partial disability at $226.36 per week.

Appellant appealed the Board's July 27, 2011 decision, asserting that the decision was not supported by substantial evidence and was legally incorrect. The Employer asserted that the Board's decision should be affirmed on appeal.

On June 29, 2012, the Court affirmed the Board's decision as to Appellant's permanent spinal, smell, and taste impairments. The Court reversed the Board's decision as to Appellant's permanent brain impairment and remanded the matter to the Board for credibility findings regarding certain expert and non-expert witnesses.

Specifically, the Court directed the Board to issue a decision on remand as to Appellant's brain impairment that included: (1) credibility findings as to Drs. Fink and Dettwyler, (2) consideration of the testimony from Drs. Fink and Rosenfeld regarding Appellant's reflexes, (3) a specific finding reconciling Dr. Rosenfeld's comments about Appellant in November 2006 with his comments after the 2007 work accident, and (4) credibility findings as to Appellant's non-expert witnesses (Cocuzza, Moyer, and Mrs. Elliott). The Court also reversed and remanded the

6

Board's decision as to Appellant's permanent balance impairment and termination of his total disability benefits to determine whether any of aforementioned evidence or credibility findings on remand changed the Board's prior decision.

On March 26, 2013, the Board held a remand hearing. At the hearing, Appellant testified that he continued to treat with Dr. Shiple for his shoulder and back injuries and that Dr. Patil, a neurologist, now treated his brain injury.[6] He further testified that he has not been employed in any capacity since the 2007 work accident and that he still does not drive.[7]

On July 26, 2013, the Board issued a decision on remand, reaffirming its prior decision to deny compensation for permanent brain and balance impairments and to terminate Appellant's total disability benefits. The Board "reviewed [and weighed] all the evidence in this case regarding [Appellant's] alleged permanent brain impairment, with particular emphasis on the specific issues raised by the Court."[8] The Board made credibility findings as to certain expert and non-expert witnesses and determined that Appellant had not proven, by a preponderance of the evidence, that he suffered a permanent brain impairment as a result of the 2007 work accident. The Board noted that because it had not changed its prior decision

---

[6] Tr. of Bd. Hrg. on Remand, 5 – 6 (Mar. 26, 2013) (hereinafter "Remand Tr. at _").

[7] *Id.* at 6.

[8] *Elliott v. State*, Hearing No. 1298390, 4 (Indus. Accident Bd. Jul. 26, 2013) (hereinafter "Bd. Dec. on Remand at _____").

as to permanent brain impairment, it "reconfirm[ed] its earlier decision that [Appellant] does not suffer a permanent balance impairment and its decision to terminate [Appellant's] total disability benefits."[9]

On August 14, 2013, Appellant filed a Notice of Appeal of the Board's decision on remand.

On December 12, 2013, Appellant filed an Opening Brief. The Employer filed an Answering Brief on January 24, 2014. On February 3, 2014, Appellant filed a Reply Brief.

## Parties' Contentions

Appellant contends that the Board erred as a matter of law and fact because the Board: (1) required "incontrovertible proof" that Appellant suffers from a permanent brain impairment as a result of the 2007 work accident, (2) did not provide specific, relevant support for its credibility determinations as to Drs. Fink, Dettwyler, and Rosenfeld, and (3) did not afford appropriate weight to the testimony of Appellant's lay witnesses.

The Employer asserts that substantial evidence supports the Board's conclusion that Appellant did not suffer permanent brain impairment related to the 2007 work accident. The Employer argues that the Board applied the correct standard in its earlier decision and again on remand in reaching such a conclusion.

---

[9] *Id.* at 15.

The Employer further argues that the Board fully addressed all of the expert credibility issues on remand and did not err in its consideration of, and weight accorded to, lay witness testimony.

**Standard of Review**

On appeal from a Board decision, the role of the Court is to determine whether the Board's findings of fact are supported by substantial evidence and whether its decision is free from legal error.[10] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] The Court does not weigh evidence, determine questions of credibility, or make findings of fact.[12] The record is viewed "in the light most favorable to the prevailing party below."[13] However, questions of law are reviewed *de novo*.[14]

---

[10] *Spellman v. Christiana Care Health Servs.*, 74 A.3d 619, 622 (Del. 2013). *See also Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998); *Shively v. Allied Sys., Ltd.*, 2010 WL 537734, *9 (Del. Super. Feb. 9, 2010).

[11] *Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993) (*citing Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1998)).

[12] *Arrants v. Home Depot*, 65 A.3d 601, 605 (Del. 2013). *See also Day & Zimmerman Sec. v. Simmons*, 965 A.2d 652, 656 (Del. 2008).

[13] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1258 – 59 (Del. 2013).

[14] *Anchor Motor Freight v. Ciabattoni*, 716 A.2d at 156; *Shively v. Allied Sys., Ltd.*, 2010 WL 537734 at *9.

The Board's decision will stand if satisfactory evidence supports the Board's factual findings and if it is free from legal error.[15]

## Discussion

### *Brain Impairment*

Under the Delaware Workers' Compensation Act, a claimant may file a petition to recover compensation for certain permanent injuries caused by a work-related accident.[16] The claimant has the burden of proving his or her permanent impairment claim by a preponderance of the evidence.[17] A compensable permanent impairment requires a showing of loss of use.[18]

"Although the Board is guided by medical evidence and testimony, 'it is the function of the Board, and not that of a physician, to determine a claimant's disability – subject to the requirement that the Board's findings be based on substantial competent evidence.'"[19] Where the Board is presented with conflicting medical expert testimony, it must resolve such testimony in its role as the fact-

---

[15] *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013) ("Only when there is no satisfactory proof to support a factual finding of the Board may the Superior Court . . . overturn that finding"). *See also Bustos v. Castle Constr. of Del., Inc.*, 2005 WL 2249762, *2 (Del. Super. 2005).

[16] 19 *Del. C.* § 2326.

[17] 29 *Del. C.* § 10125(c) ("The burden of proof shall always be upon the applicant or proponent"); *Drainer v. Heating Oil Partners*, 2013 WL 3871412, *6 (Del. Super. June 27, 2013), *aff'd*, 2014 WL 470399 (Del. Feb. 4, 2014).

[18] *See* 19 *Del. C.* § 2326(g) ("The Board shall award proper and equitable compensation for . . . the loss of use of any member or part of the body . . . ."); *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 – 37 (Del. 2006) (finding that "evidence of pain without loss of use is not a compensable permanent impairment").

[19] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, *3 (Del. Super. Oct. 28, 2010) (quoting *Poor Richard Inn v. Lister*, 420 A.2d 178, 180 (Del. 1980)).

finder.[20] The Board is free to accept or reject an expert's testimony in whole or in part.[21] However, where the expert medical testimony is by deposition, the Board must provide "specific relevant reasons" based on evidence in the record for accepting one expert's testimony over the other's.[22] The Board may reject the opinion of a medical expert if it determines that opinion is primarily based on what a claimant has told the doctor and the underlying facts suggest otherwise.[23] The Board may also "accord more weight to a non-treating expert over a conflicting treating expert."[24] The Board's "acceptance of expert testimony, even when contradicted by another expert, qualifies as substantial evidence for purposes of appeal."[25]

In the instant case, Appellant filed a petition to recover compensation for a forty percent permanent impairment to his brain. As a result, Appellant had the ultimate burden of proof in establishing permanent brain impairment. In both of its

---

[20] *Munyan v. Daimler Chrysler Corp.*, 909 A.2d at 136.

[21] *Sweeney v. Wal-Mart*, 2013 WL 3975149, *4 (Del. Super. July 31, 2013) (citing *Turbitt v. Blue Hen Lines*, 711 A.2d 1214, 1215 (Del. 1998)).

[22] *Rhinehardt-Meredith v. State*, 2008 WL 5308388, *5 (Del. Dec. 22, 2008) (discussing *Lindsay v. Chrysler Corp.*, 1994 WL 750345 at *3 (Del. Super. Dec. 7, 1994)).

[23] *Sweeney v. Wal-Mart*, 2013 WL 3975149, *4 (noting that "when the expert medical opinion is based in large part on a claimant's recital of subjective complaints and the Board finds the underlying facts to be different, the Board may reject the expert's conclusion"). *See also Flowers v. Daimler Chrysler Corp.*, 2005 WL 2303811, *4 (Sept. 20, 2005) (citing *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[24] *Noel-Liszkiewicz v. La-Z-Boy, Inc.*, 2012 WL 4762114, *5 (Del. Super. Oct. 3, 2012), *aff'd*, 2013 WL 519603 (Del. Feb. 12, 2013) (citing *Clements v. Diamond State Port Corp.*, 831 A.2d 870, 877 (Del. 2003)).

[25] *Cottman v. Burris Fence Constr.*, 2006 WL 3742580, *4 (Del. Dec. 19, 2006) (internal quotation marks and citation omitted).

decisions, the Board clearly articulates the preponderance of the evidence standard.[26] The Board's use of "incontrovertible proof" in its decision[27] on remand "may have been poor word choice but it does not establish that the Board ignored the appropriate standard and replaced it with a higher burden of proof."[28] Moreover, it is well-established that the Employer "need not raise and prove alternative theories of causation in order to prevail."[29] Consequently, Appellant's argument that the Board applied an improper burden of proof is without merit.

Furthermore, on remand, the Board considered all of the evidence and testimony in the record before responding to each of the Court's four directives.

The Board fully explained its reasons for rejecting the conclusion of Appellant's medical experts (Drs. Fink, Dettwyler, and Shiple) that Appellant suffered from a permanent brain impairment which they diagnosed as post-concussion syndrome.

Specifically, the Board accepted Dr. Fink's testimony that Appellant suffered a concussion from the 2007 work accident and symptoms of post-

---

[26] *See* Bd. Dec. at 40 ("After considering the voluminous testimony on this [brain impairment] issue, the Board finds the testimony of the Employer's experts more persuasive and concludes that, more likely than not, [Appellant] does not suffer from a permanent brain injury related to the acknowledged work accident"); Bd. Dec. on Remand at 4 ("The burden of proof on the issue of permanent brain impairment remains on Claimant as the original petitioner . . . After weighing the evidence, the Board again finds, by a preponderance of the evidence, that [Appellant] has not suffered a permanent brain injury as a result of the work accident on February 2, 2007").

[27] *See* Bd. Dec. on Remand at 6 (noting that "neither Dr. Fink nor Dr. Rosenfeld has stated that these findings [of hyperreflexia and clonus] provide incontrovertible proof of a permanent brain injury").

[28] *Goicuria v. Kauffman's Furniture*, 1997 WL 817889, *1 (Del. Super. Oct. 30, 1997), *aff'd*, 1998 WL 67720 (Del. Feb. 5, 1998).

[29] *Strawbridge & Clothier v. Campbell*, 492 A.2d 853, 853 (Del. 1985).

concussion syndrome for a period of time thereafter. However, the Board cited Dr. Fink's heavy reliance on testing performed at Bryn Mawr Rehabilitation Center and on Appellant's subjective complaints as the reasons for rejecting his opinion that Appellant suffered a forty percent permanent impairment to his brain.

The Board explained that "the [Appellant's experts'] testimony about [his] treatment and test results at Bryn Mawr . . . lacked detail and left the Board with an incomplete understanding of the Bryn Mawr doctors' tests and conclusions."[30]

The Board further explained that, based on its own observations of Appellant and the inconsistencies noted by the Employer's medical experts, it doubted the credibility of some of Appellant's subjective complaints. Specifically, the Board noted that Appellant made conflicting statements to doctors regarding his psychological history, complained of worsening cognitive problems despite receiving extensive treatment, performed poorly on Dr. Langan's validity tests, and Dr. Langan's MMPI-3 test results showed symptom somatization. As the Board correctly noted, it was permitted to consider Appellant's credibility, or lack thereof, when it discounted Dr. Fink's testimony because his diagnosis and opinion were based on the integrity of Appellant's subjective complaints.

Moreover, although Dr. Fink found hyperreflexia and clonus when he physically examined Appellant, the Board noted that both Dr. Fink and Dr.

---

[30] Bd. Dec. on Remand at 11.

13

Rosenfeld testified that there is more than one possible cause for such findings and neither expert definitively testified that these findings did, in fact, indicate a permanent brain impairment in Appellant.

As to Appellant's treating psychologist, the Board found that while Dr. Dettlwyler saw Appellant more times than the other medical experts who testified before the Board, "the weight afforded a doctor's opinion is never solely determined by the number of times he or she has seen the patient."[31]

In addition, the Board did not accept Dr. Dettwyler's opinion that Appellant suffered permanent brain impairment as a result of the 2007 work accident, because he, too, relied on testing performed at Bryn Mawr Rehabiliation Center in forming his opinion. The Board also reasoned that Dr. Dettwyler conceded further testing was necessary in order to determine if a cognitive issue caused Appellant's memory lapses involving his age, his son's date of birth, and the President's name. Furthermore, the Board determined that Dr. Dettwyler "undermined his own credibility by making the unsupported generalization" that Dr. Langan and Dr. Reiger "always found nothing wrong or found a patient's condition to be related to pre-existing psychological problems."[32]

---

[31] *Id.*

[32] *Id.* at 12.

Additionally, although the Court did not direct the Board to do so, the Board addressed the credibility of Dr. Shiple's opinion regarding Appellant's permanent brain impairment. The Board found that although Dr. Shiple treated Appellant for his musculoskeletal injuries, accepted what Appellant reported to him as accurate, referred Appellant to Bryn Mawr Rehabilitation Center when his concussion symptoms persisted, and relied on that facility's testing in forming his opinion, Dr. Shiple's own credibility was undermined by "some general bias" held by Dr. Shiple concerning "DME evaluations and testing in general."[33]

As to Dr. Rosenfeld (one of the Employer's experts), the Board credited his testimony in general, despite his use of "overly dramatic" language to describe Appellant's physical appearance pre- and post-work accident.[34] The Board compared Dr. Rosenfeld's comments regarding Appellant in 2006 (when he treated Appellant for an unrelated injury) and post-work accident and found that Dr. Rosenfeld "sought to contrast [Appellant's] actual physically robust appearance with the doctor's pre-exam expectations" and that such language was used to emphasize that Appellant's subjective complaints were inconsistent with his physical appearance.[35]

---

[33] *Id.* at 13.

[34] *Id.* at 9.

[35] *Id.*

15

The Board noted that it had been "presented with qualified medical experts who reached distinctly different conclusions on the issue of brain permanency after examining [Appellant] on multiple occasions and reviewing most of the same clinical exam findings, history, and diagnostic test findings."[36] Ultimately, the Board found the Employer's experts' (Drs. Sommers, Langan, and Rieger) opinion that Appellant suffered from a psychological condition or malingering to be more persuasive that Appellant's experts' opinion. The Board summarized all of the experts' opinions as to permanent brain impairment, explained its reasons for accepted the Employer's experts' opinion, and, on remand, articulated reasons for rejecting Appellant's experts' opinion. It is not required to do anything further.[37]

Finally, the Board also reconsidered the testimony of Appellant's non-expert witnesses (his supervisor, partner, and wife). The Board accepted their testimony that they observed significant changes in Appellant's behavior and capabilities after the 2007 work accident, which continued despite treatment. However, the Board stated that "none of these witnesses has medical expertise and cannot opine whether the behaviors and capabilities they have observed are related to an organic

---

[36] *Id.*

[37] *See Johnson v. E.I. Dupont de Nemours & Co.*, 2000 WL 33115805, *3 (Del. Super. Oct. 4, 2000) (affirming a Board decision denying petition for permanent impairment benefits where the "Summary of the Evidence" and "Permanent Impairment" sections, when taken together, made it clear that the Board evaluated all of the expert testimony, personally observed the appellant, and explained its reason for accepting one expert's opinion over the other's).

brain injury."[38] The Board also noted that "medical evidence . . . is most critical to the Board's decision in this case."[39]

As the trier of fact, the Board determines the credibility of witnesses as well as the appropriate weight to accord witness testimony and the reasonable inferences to be drawn therefrom.[40] Such determinations "are functions that are reserved exclusively for the Board."[41]

### *Balance Impairment*

As the Court previously noted, "the Board is free to reject with reason the expert opinion of Dr. Fink as to [Appellant's] complaints of dizziness and balance problems and accept the opinion of Dr. Sommers that no balance impairment exists."[42] On remand, the Board found that the experts' testimony on their hyperreflexia and colonus findings in Appellant did not definitively indicate the existence of permanent brain impairment. Thus, the Board was not required to reconsider Dr. Rieger's comment that dizziness is a symptom that is commonly faked. The Board's decision that Appellant does not suffer from a permanent balance impairment stands.

---

[38] Bd. Dec. on Remand at 14.

[39] *Id.*

[40] *Saunders v. DaimlerChrysler, Corp.*, 2006 WL 390098, *4 (Del. Feb. 17, 2006).

[41] *Opportunity Ctr., Inc. v. Jamison*, 2007 WL 3262211, *3 (Del. May 24, 2007).

[42] *Elliott v. State*, 2012 WL 2553327 at *10.

*Termination of Total Disability*

Appellant also appealed the Board's decision to terminate Appellant's total disability benefits. Appellant takes issue with the Board's acceptance of the opinions of the Employer's experts (Drs. Sommers, Rosenfeld, and Reiger) that Appellant did not have a permanent brain impairment and that Appellant was able to work without explaining its reasons for discounting his experts' opinions to the contrary.

Under Delaware law, the Board is authorized to increase, decrease, or review previously agreed-upon compensation if an interested party submits an application asserting that the injured employee's condition or circumstances have changed.[43]

To prevail on a petition to terminate total disability benefits, the employer bears the initial burden of demonstrating that the injured employee is no longer totally incapacitated to work, which may require the Board to weigh and choose between conflicting expert testimony.[44] The burden then shifts to the injured employee to show that he is a "displaced worker" (i.e., "one who suffers from a compensable injury that renders him so handicapped that he will 'no longer be employed regularly in any well known branch of the competitive labor market' and

---

[43] 19 *Del. C.* § 2347. *See also Arrants v. Home Depot*, 65 A.3d at 605.

[44] *Shively v. Allied Sys., Ltd.*, 2010 WL 537734 at *11.

could only obtain steady employment if a job is specially created for him" or that his treating physician ordered him not to work).[45] If the injured employee shows that he is a displaced worker, then the employer must provide evidence that regular employment is available within the injured employee's capabilities.[46]

In its decision prior to remand, the Board found that the Employer presented evidence that Appellant was no longer completely incapacitated, Appellant did not establish displacement (even though he was entitled to follow Dr. Shiple's instructions not to return to work while the Employer's Petition was pending), and that the Employer presented evidence of twelve jobs within Appellant's vocational and physical capabilities. On remand, the Board explained its reasons for discounting Appellant's experts as to permanent brain impairment. The Board stated that it weighed all of the evidence and found that Appellant did not suffer from permanent brain impairment, and, as a result, the Board reaffirmed its decision to terminate total disability. Thus, the Board's decision to terminate Appellant's total disability benefits stands.

## Conclusion

Therefore, the Board applied the appropriate standard to reach its decision that Appellant did not meet his burden of proving, by a preponderance of the evidence, that he suffered permanent brain impairment as a result of the 2007 work

---

[45] *Id.* at *13 (quoting *Torres v. Allen Family Foods*, 672 A.2d 26, 30 (Del. 1995)).

[46] *Id.*

accident. It was within the Board's purview to resolve the conflicting medical expert testimony on the issue of permanent brain impairment and to accord weight to the non-experts' testimony. On remand, the Board cited specific, relevant reasons for rejecting Appellant's experts' opinion and addressed each of the issues raised by the Court before remand. The Board's acceptance of the Employer's experts' opinion that Appellant does not suffer from permanent brain impairment over Appellant's experts' opinion to the contrary constitutes substantial evidence on appeal. Because the Board did not change its decision as to permanent brain impairment on remand after making certain expert and non-expert findings, the Board was not required to reconsider its decision as to permanent balance impairment and to terminate Appellant's total disability benefits.

**ACCORDINGLY**, the Board's decision regarding Appellant's brain and balance impairments is **AFFIRMED**. The Board's decision granting the Employer's Petition to Terminate Total Disability Benefits is also **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Diane Clarke Streett
Diane Clarke Streett
Judge

Original to Prothonotary
cc: Ronald Stoner, Esquire
John J. Klusman, Jr., Esquire
Benjamin K. Durstein, Esquire

20