Stephen **ARRANTS**, Claimant Below, Appellant,

v.

The **HOME DEPOT**, Employer Below, Appellee.

No. 662, 2012.

Supreme Court of Delaware.

Submitted: April 24, 2013.

Decided: May 7, 2013.

Michael I. Silverman, Esquire and D. Miika Roggio, Esquire, Silverman, McDonald & Friedman, Wilmington, Delaware, for appellant.

Scott A. Simpson, Esquire and Elissa A. Greenberg, Esquire, Elzufon, Austin, Tarlov & Mondell, P.A., Wilmington, Delaware, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice:

The claimant-appellant, Stephen Arrants ("Arrants" or "Claimant"), appeals from a Superior Court Order affirming the Industrial Accident Board's (the "Board") order granting the employer-appellee's, Home Depot's ("Home Depot"), petition to terminate Arrants' total disability benefits. Arrants raises two claims on appeal. First, he argues that the Board's decision was in error because all experts agreed that his condition had not improved since the 2007 Board finding of total disability; and second, that the Board's decision was not supported by competent evidence in the record.

We have concluded that both arguments are without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts and Procedural History

In May, 2004, Arrants injured his lower back and neck while in the course and scope of his employment at Home Depot. Home Depot and Arrants later settled Arrants' worker's compensation claim, with Home Depot agreeing to pay worker's compensation for total disability.

In 2007, Home Depot filed a petition to terminate Arrants' total disability payments. The Board denied the motion, finding Arrants to still be totally disabled. In 2008, Home Depot filed another petition for termination of total disability payments. The petition was withdrawn pending the outcome of Arrants' scheduled spinal surgery. In 2009, Arrants and Home Depot reached an agreement on compensation.

In 2011, Home Depot filed a third petition to terminate Arrants' total disability payments. Home Depot presented the testimony of Dr. David Stephens ("Dr.Stephens"), a medical expert who had examined Arrants eight times since his injury. Dr. Stephens opined that Arrants' diagnosis of disability was, at that time, based solely on subjective pain complaints. Dr. Stephens also testified that Arrants' pain reports had not diminished since the

Board's denial of Home Depot's 2007 petition.

Dr. Stephens testified that he believed the pain was, in part, also a result of a non-physical source: Arrants' chronic opioid dependency. In October, 2011, Arrants was taking high doses of Oxycontin three times a day, Roxicodone four times a day, Cymbalta twice a day, as well as Klonopin, Nuvigil, Tazodone, and Abilify. Dr. Stephens believed the 2009 surgery was unnecessary and recommended against it at the time. Dr. Stephens also believed that Arrants' lack of progress after the surgery bore out his—Dr. Stephens'—medical opinion that the surgery was unnecessary. In Dr. Stephens' opinion, Arrants was capable of full time sedentary work.

Home Depot also presented Vocational Consultant Daniel O'Neill ("O'Neill"), who performed a labor market survey identifying eighteen sedentary jobs Arrants was capable of performing in the current labor market. O'Neill testified to Arrants' transferable skills, including high school education, specialized technical knowledge, and extensive customer service experience. O'Neill had confirmed with each prospective employer that Arrants' qualifications made him a viable candidate for the available position.

Dr. Selina Xing ("Dr.Xing"), Arrants personal physician, testified on his behalf. Dr. Xing described Arrants multiple surgeries, including total disc replacements and a disc fusion. Dr. Xing testified that Arrants reports being in constant "agony," with levels of pain reaching a nine out of ten. She had also diagnosed Arrants with severe depression, which she related to his injury, constant pain, and lack of employment.

Dr. Xing testified Arrants was totally disabled, and could not "do any gainful job on a consistent basis." However, Dr. Xing testified she deemed Arrants to be totally disabled based only on his subjective pain complaints. In similar circumstances, Dr. Xing testified, a person with Arrants' diagnosis would typically be able to return to work, and that returning to work would be psychologically beneficial.

The record reflects that Arrants participated in a prescription drug detoxification program. He admitted that he resumed taking the prescription medications after being released from the detoxification program because he "had to have something to take the edge off." He also admitted to taking prescription medication prescribed to his fiancé.

The Board concluded that Arrants was no longer totally disabled. The Board found that Arrants had "not established displacement [from work] either on a *prima facie* basis or by means of a failed job search." The Board concluded there were sedentary jobs available for Arrants on the open labor market and that Arrants had the necessary skills to qualify and compete for those jobs. The Board found that the open positions available paid less than Arrants' pre-accident average weekly wage; therefore, the Board awarded Arrants $128.94 per week for his partial disability.

Arrants appealed the Board's decision to the Superior Court, which affirmed. This appeal followed.

### Standard of Review

The standard of appellate review for a Board's decision is the same in this Court and the Superior Court. A Board's decision is reviewed on appeal for errors of law and to determine whether substantial evidence exists to support the Board's findings of fact and conclusions of law.[1]

---

1. *Person–Gaines v. Pepco Holdings, Inc.,* 981 A.2d 1159, 1161 (Del.2009).

"Substantial evidence equates to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] Appellate courts do not weigh the evidence, determine questions of credibility, or make factual findings.[3] On appeal, errors of law are reviewed *de novo*.[4]

 Absent an error of law, the standard of appellate review for a Board's decision is abuse of discretion.[5] "The Board has abused its discretion only when its decision has 'exceeded the bounds of reason in view of the circumstances.'"[6] The Board "may adopt the opinion testimony of one expert over another; and that opinion, if adopted, will constitute substantial evidence for purposes of appellate review."[7] The Board also "may accept or reject an expert's testimony in whole or in part."[8]

### *Periodic Disability Review.*

Title 19, section 2347 of the Delaware Code states in relevant part:

On the application of any party in interest on the ground that the incapacity of the injured employee has subsequently terminated, increased, diminished or recurred or that the status of the dependent has changed, the Board may at any time, but not oftener than once in 6 months, review any agreement or award.

To show that a claimant's incapacity has terminated, evidence must be presented that the claimant is medically able to return to work and that employment is available within the claimant's restrictions. In *Puckett v. Matrix Services*,[9] we stated:

Section 2347 allows an employer to petition the Board to review previous total disability awards, so long as there is a change in condition or circumstances. This is different from a requirement that the employer must prove the physical injury has changed. The Superior Court has explained that a petitioner seeking to alter benefits under § 2347 must "show that [claimant's] condition or circumstances have changed since [the prior determination of total disability] such that her disability has diminished and she is now able to return to work in some capacity." Section 2347 does not require the symptoms of the injury or condition be significantly diminished. . . .[10]

### *Condition and Circumstances*

 Arrants first argues that since both experts—Dr. Stephens and Dr. Xing—agreed there had been no improvement in the pain he reported feeling, there was no new evidence of his condition and the petition to terminate total disability payments should therefore have been denied. Dr. Stephens agreed that Arrants did not report a decrease in his level of pain. There was additional evidence, however, from which the Board could reasonably conclude that Arrants' condition and circumstances had changed sufficiently to allow him to

---

**2.** *Id.* (internal citation omitted). *See also Olney v. Cooch*, 425 A.2d 610, 614 (Del.1981) (defining substantial evidence as "more than a scintilla but less than a preponderance").

**3.** *Person–Gaines v. Pepco Holdings, Inc.*, 981 A.2d at 1161.

**4.** *Id.*

**5.** *Id.*

**6.** *Id.* (internal citation omitted).

**7.** *Id.*

**8.** *Id.*

**9.** *Puckett v. Matrix Servs.*, 2013 WL 69234 (Del. Jan. 7, 2013).

**10.** *Id.* at *2 (internal citation and emphasis omitted).

return to fulltime, sedentary work.[11] That evidence included the results of Arrants' surgeries, the passage of time, and evidence of job availability.

The surgeries undeniably changed Arrants' objective physical condition, as they involved hardware placement, disc removal, and disc fusions, which altered the physical integrity of Arrants' spine. Dr. Xing—Arrants' own expert—conceded that someone in Arrants' condition after the surgery would typically be able to return to work. Furthermore, Dr. Xing testified that Arrants' subjective pain complaints formed the basis of her continuing total disability assessment.

■ To accept Arrants' argument, that Dr. Xing's medical opinion is dispositive, would be to find that a claimant's subjective pain reports are, as a matter of law, independently significant enough to preclude the Board from granting a petition to terminate total disability. Although the Board should, when appropriate, consider a claimant's subjective complaints of pain, there is no rule of law that this sole factor is outcome determinative, especially in cases when the employer presents contrary expert medical testimony. Based upon Dr. Stephen's testimony, the Board determined that Arrants was capable of full time sedentary work.

■ To satisfy the requirements of section 2347, in addition to determining that Arrants was medically able to return to work, the Board was also required to find that employment was available within his restrictions. The record reflects that Home Depot's Vocational Consultant, O'Neill, performed a labor market survey identifying eighteen sedentary jobs Ar-

rants was capable of performing in the current labor market. O'Neill further testified that Arrants had a variety of transferable skills, and independently verified with all eighteen employers that Arrants' qualifications made him a viable candidate for each open position. The Board accepted O'Neill's testimony.

Accordingly, the record reflects that the Board satisfied both requirements under section 2347—that Arrants was medically able to return to work and that employment was readily available. Thus, the record supports the Board's conclusion Arrants' condition and circumstances had both changed.

### Sufficient Evidence Presented

Arrants next argues that the Board's decision was not supported by competent record evidence. The Board ultimately agreed with Dr. Stephens that Arrants was physically capable of working in a full-time sedentary capacity. It was within the Board's discretion to accept Dr. Stephens' testimony over that of Dr. Xing.[12] Where there is conflicting medical testimony, it is well established under Delaware law that the Board may rely on the opinion of either expert and such evidence constitutes substantial evidence for the purpose of the Board's decision.[13] The Board also accepted O'Neill's determination that eighteen different jobs were then available to Arrants.

■ Despite this, Arrants argues that the Board's decision is fatally flawed by its unsupported comment that Arrants developed a "tolerance" to his condition over the years. It is axiomatic that the Board may not rely on evidence or infor-

11. *See id.*

12. *Person–Gaines v. Pepco Holdings, Inc.*, 981 A.2d at 1161.

13. *Id.*

mation outside of the record.[14] Here, no expert ever testified that Arrants developed a tolerance or acclimated to his condition.

Nevertheless, the Board's reference to Arrants' "acclima[tion]" to his condition is secondary to its ultimate conclusion. The Board had before it: first, evidence that the passage of time informed Dr. Stephens' opinion that Arrants no longer suffered from the previously unpleasant side effects of his medication; and second, Dr. Xing's testimony that other patients with similar conditions recovered over time. The Board also heard testimony that Arrants' psychological troubles could be improved by his returning to work, and that jobs were available in the open labor market for which Arrants was qualified.

Therefore, the Board had sufficient evidence to support its ultimate determination that Arrants was no longer totally disabled and was able to return to full-time, sedentary work. Accordingly, the Board's improper reference to Arrants' tolerance for his condition was a harmless error.

### Conclusion

The judgment of the Superior Court is affirmed.

---

14. *Turbitt v. Blue Hen Lines, Inc.,* 711 A.2d 1214, 1216 (Del.1998).