IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IDA WARREN, | § | |
| | § | No.   256, 2020 |
| Claimant Below, | § | |
| Appellant, | § | Court Below:   Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. S19A-09-001 |
| AMSTED INDUSTRIES, INC., | § | |
| | § | |
| Employer Below, | § | |
| Appellee. | § | |
| | § | |
| | § | |

Submitted:   February 3, 2021
Decided:   March 29, 2021

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

# O R D E R

On this 29th day of March 2021, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)    The Appellant, Ida Warren, was an employee of the Appellee, Amsted Industries, Inc.   On October 22, 2010, she sustained injuries from repetitive use of her upper extremities.   The parties agreed that Warren was entitled to receive workers' compensation, total disability benefits, beginning October 30, 2010.

(2)    In 2011, Amsted filed a petition to terminate Warren's benefits, alleging that she was capable of working with restrictions.   After a hearing, the Industrial Accident Board (the "Board") found that Warren remained totally

disabled.[1]   Amsted filed another petition to terminate Warren's benefits in 2013. Warren expressed an interest in negotiating a commutation of benefits, and the parties ended that proceeding without a hearing.   Warren continued to receive her total disability benefits.   The parties were unable to come to an agreement on a commutation of benefits, and Amsted filled another petition to terminate Warren's benefits in 2015.   After a number of continuances, that petition was withdrawn when Amsted was unable to depose a medical expert by the scheduled hearing date.

(3)   Amsted filed another petition to terminate Warren's benefits in 2017, claiming that Warren was physically able to return to work.   After a hearing was held on February 2, 2018 and June 8, 2018 (the "2018 hearing"), the Board issued a decision dated July 24, 2018, finding that Warren was no longer entitled to benefits because she had voluntarily retired and removed herself from the work force.[2]

(4)   Warren appealed to the Superior Court.   The Superior Court found that Amsted had not properly pled that benefits should be terminated on the grounds that Warren had voluntarily retired and the issue of retirement had not been fairly raised in the Board proceedings.   It reversed the Board's decision and remanded the case for a new hearing on all issues, including the retirement issue, at which the

---

[1] *Warren v. Amsted Indus., Inc.*, I.A.B. No. 1360974 (Mar. 7, 2012).
[2] *Warren v. Amsted Indus., Inc.*, I.A.B. No. 1360974 (July 23, 2018).

parties could present whatever additional evidence and arguments either thought appropriate.[3]

(5)     After the rehearing on remand, held on August 2, 2019 (the "2019 hearing"), the Board issued a decision, dated August 19, 2019, again finding that Warren was no longer entitled to benefits because she had voluntarily retired and removed herself from the workforce.[4]   The Board also found that Warren was not a displaced worker.

(6)     Warren again appealed to the Superior Court.   The Superior Court affirmed.[5]

(7)     Warren now appeals to this Court, setting forth five claims.   First, she argues that the Board "improperly failed to address the issue of total disability, and erroneously concluded that [she] has been on light duty status since 2012."[6]   Second, Warren argues that the "retirement issue was waived, or is otherwise precluded by laches and quasi-estoppel."[7]   Third, Warren argues that the "Board's denial of [her] displaced worker status is legally flawed, factually erroneous, and an abuse of discretion."[8]   Fourth, she argues that the "Board's determination that [she]

[3]  *Warren v. Amsted Indus., Inc.*, 2019 WL 1780799, at *5 (Del. Super. Apr. 23, 2019).
[4]  *Warren v. Amsted Indus., Inc.*, I.A.B. No. 1360974 (Aug. 16, 2019) ("Board Decision Two").
[5]  *Warren v. Amsted Indus., Inc.*, 2020 WL 4582504, at *12 (Del. Super. Aug. 10, 2020).
[6]  Appellant's Op. Br. at 9.
[7]  *Id*. at 21.
[8]  *Id*. at 27.

voluntarily retired is an error of law and abuse of discretion."[9]   Finally, she argues that the Board was biased against her in violation of her due process rights.

(8)    "The review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[10]   "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[11]    "It means more than a scintilla but less than a preponderance of the evidence."[12]   "On appeal, this Court will not weigh the evidence, determine questions of credibility, or make its own factual findings." [13]    "Weighing the evidence, determining the credibility of witnesses, and resolving any conflicts in the testimony are functions reserved exclusively for the Board."[14]   "Further, '[o]nly when there is no satisfactory proof to support a factual finding of the Board may the Superior Court or this Court overturn that finding.'"[15]   On appeal, errors of law are reviewed *de novo*.[16]

---

[9] *Id*. at 32.

[10] *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016) (citing *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Mar. 24, 2008)).

[11] *Id*. (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[12] *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013) (citing *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988)).

[13] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66-67 (Del. 1965)).

[14] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (citing *Noel-Liszkiewicz*, 68 A.3d at 191)).

[15] *Id*. at 870-71 (citing *Noel-Liszkiewicz*, 68 A.3d at 191)).

[16] *Arrants v. Home Depot*, 65 A.3d 601, 605 (Del. 2013).

(9)     We first address Warren's fourth claim, that the Board erred and abused its discretion by finding that she had voluntarily retired and removed herself from the work force.   Voluntary retirement can be a ground for terminating workers' compensation benefits.   This Court has explained:

> [V]oluntary retirement is only one factor to consider in determining whether an employee is entitled to disability benefits under Delaware law.   If, for example, an employee's retirement decision was motivated by a work-related injury that affected that employee's ability to find a comparable job, that injury has diminished the employee's earning power and thereby entitles the employee to workers' compensation benefits.   An employee may collect disability benefits even after voluntarily retiring from a specific job, so long as that employee does not intend to remove herself from the job market altogether.   But where . . . an employee does not look for any work or contemplate working after retiring, however, and is content with her retirement lifestyle, that employee is not eligible for workers' compensation benefits.[17]

Other considerations include "'whether the employee was physically capable of working at the previous job, whether the employee sought another job, whether the employee lost earning power due to the injury, whether the employee was below the usual age for retirement' and 'whether the decision to retire was motivated by

---

[17] *Estate of Jackson v. Genesis Health Ventures*, 23 A.3d 1287, 1290-91 (Del. 2011) (internal quotations and citations omitted); *See also General Motors Corp. v. Willis*, 2000 WL 1611067, at *2 (Del. Super. Sep. 5, 2000) ("Retirement, in a traditional sense, can disqualify an employee from receiving worker's compensation benefits. . . This is especially true where an employee does not look for work after his retirement and where the Claimant is content with his or her retirement lifestyle." (internal citations omitted)).

5

the work-related injury.'"[18]    Whether an employee has voluntarily retired and removed herself from the work force is determined under the totality of the circumstances.[19]

(10)    The Board correctly understood the legal standard to be applied in determining whether an injured worker has voluntarily retired and removed herself from the work force for reasons unrelated to her work injury.   Warren argues that the Board refused to consider the difference between "traditional" retirement and retirement forced by the work injury, but the record is clear that the Board understood that in order to find against Warren on the issue of retirement, it had to find that she voluntarily retired and removed herself from the work force for reasons unrelated to her work injury.   As the Board stated, "[t]he critical question is whether, under the totality of the circumstances, it is reasonable to conclude that Claimant has voluntarily chosen to remove herself from the competitive labor market for reasons unrelated to her work injury."[20]

(11)    Turning to the evidence, at the 2018 hearing several witnesses testified that Warren herself reported that she had retired.   Warren's treating physician, Dr. Richard DuShuttle, testified that he had released Warren to light duty work as early

---

[18] *Bruce v. Chrysler Grp., LLC*, 2011 WL 2163594, at *3 (Del. Super. Apr. 27, 2011) (quoting *Mladenovich v. Chrysler Grp., LLC*, 2011 WL 379196, at *5 (Del. Super. Jan. 31, 2011)).
[19] *State v. Archangelo*, 2017 WL 3912786, at *1 (Del. Super. Aug. 9, 2017).
[20] Board Decision Two at 35.

as May 2012, but did not issue work notes for her because she said she was retired, so work notes were not needed. Dr. DuShuttle's records also indicate that in September 2013, Warren stated that she was retired and did not need work notes. Dr. Jeffrey Meyers performed a permanency assessment and functioning assessment. Dr. Meyers confirmed that Dr. DuShuttle had released Warren to light duty work in October 2012 and September 2013, but Warren had reported to Dr. DuShuttle that she was retired and did not need a work note. Dr. Meyers testified that after September 19, 2013, Warren's treatment records contain no further information regarding her work restriction.

(12) Neil Taylor, an occupational therapist, performed a functional capacity evaluation on Warren on September 28, 2017. He concluded that she was capable of working full-time, five days a week. He testified that Warren said to him she intended to retire by the time she was 66, even before the work accident, and she had "done her work time and is too old to do that kind of work anymore."[21] Warren was 68 at the time of the 2018 hearing. Warren admitted that she had not looked for any employment since her work injury, despite the fact that Dr. DuShuttle had released her to light duty work as early as 2012.

(13) The Board found the foregoing testimony to be credible and found that it supported a conclusion that she had retired and voluntarily removed herself from

---

[21] *Id*. at 38.

7

the work force. The Board also found that aspects of her current lifestyle, such as downsizing her home, some travelling, reading, and going to her local senior center supported an inference that she had adopted and was enjoying a retirement lifestyle.

(14) At the 2018 hearing, Warren denied ever telling any health care provider that she was retired. She admitted that she had not looked for any employment since her work injury but claimed that her doctors had not released her for work, despite Dr. DuShuttle's testimony that he had released her for light duty work as early as 2012.

(15) At the 2019 hearing, the Board received additional evidence on the issue of retirement. Dr. DuShuttle testified that Warren was totally disabled in 2013 and he informed her then that the permanency of her injury would not improve. He testified:

> No, no matter how you look at it, I personally don't believe that she was retiring, []regardless of her, you know, even if she hadn't had that injury or problem. I think that was the reason. She stopped working because of her injury. Maybe I used the word retired, but it was never because it was independent of her work injury.[22]

Warren again testified that she does not consider herself retired and she stopped work because she was injured on the job.

---

[22] *Warren*, 2020 WL 4582504, at *11.

(16)    The Board found Dr. DuShuttle's testimony at the 2019 hearing to be inconsistent with his testimony at the 2018 hearing and found the 2018 testimony to be the more credible.   The Board also found Warren's testimony from both the 2018 and 2019 hearings to be unpersuasive and not credible.

(17)    Bearing in mind the deferential standard we apply to the Board's findings of fact, we conclude that there was sufficient evidence to support the Board's finding that Warren voluntarily retired and removed herself from the work force for reasons unrelated to her work injury.   Conflicts in the evidence were for the Board to resolve.

(18)    Since we affirm the Board's finding that Warren voluntarily retired and is no longer entitled to benefits, we need not address Warren's third claim that the Board erred by finding that she is not a displaced worker.   Warren's first claim attacks the Board's factual findings and we reject it based on our conclusion that the Board's factual finding that Warren voluntarily retired and removed herself from the workforce is supported by the evidence.   We reject Warren's second claim that the retirement issue was waived or is otherwise precluded by laches and quasi-estoppel. The remand hearing gave both parties an opportunity to have all issues heard on the merits.   Warren's fifth claim, that the Board was biased against her, has no merit and is rejected.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court and Industrial Accident Board is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice