IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LEMUEL SHIPMON, | § | |
| | § | No. 261, 2021 |
| Appellant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. N20A-01-007 |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee Below, | § | |
| Appellee. | § | |

Submitted: February 2, 2022
Decided: April 1, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

# **O R D E R**

Upon consideration of the parties' briefs and the record on appeal, it appears that:

(1) The Appellant, Lemuel Shipmon, appeals from a judgment of the Superior Court affirming a decision of the Industrial Accident Board (the "Board"). The Board's decision denied his Petition to Determine Additional Compensation Due. He makes two arguments on appeal. First, he argues that the Board erred by failing to award him "permanent partial impairment after determining that he suffered permanent limited function."[1] Second, he argues that the Board's decision

---

[1] Corrected Opening Br. at 9-12.

is not supported by substantial evidence. For the reasons that follow, we have concluded that the Superior Court's judgment should be affirmed.

(2) On August 3, 2017, Shipmon suffered an injury when he fell off a stool while employed as a constable at Delaware Technical Community College (the "Employer"). He claims that as a result of that incident, he injured his right hand, left elbow, cervical spine, and lumbar spine, and now suffers a 22% permanent impairment to his cervical spine.

(3) Shipmon filed a Petition to Determine Additional Compensation Due with the Board based upon his claim of a 22% permanent impairment to his cervical spine. The claim was based upon the medical opinions of Dr. Stephen Rodgers, who is board certified in occupational and preventative medicine. Dr. Rodgers is also certified in the use of the *AMA Guides to the Evaluation of Permanent Impairment* (the "*AMA Guides*"). In arriving at his opinion, Dr. Rodgers relied upon DRE (Diagnose-Related Estimate) Table 15-5 in the fifth edition of the *AMA Guides*. Table 15-5 has five Categories. Excluding Category I, each Category includes a range of permanent impairment to account for the resolution or continuation of symptoms and their impact on the performance of daily activities. The rater places the patient in a Category based on clinical judgment and on a level of function helped by the history and by standardized forms. Dr. Rodgers's evaluation placed Shipmon in Category III. Category III contains a range of 15% to 18% permanent impairment

to the whole person. He then applied a 0.75 conversion factor to arrive at his conclusion that there was a 22% permanent impairment of the cervical spine.

(4) At a hearing before the Board on October 24, 2019, the Employer presented the testimony of Dr. Stephen Fedder—a board certified neurosurgeon. Dr. Fedder examined Shipmon on January 30, 2018, and June 26, 2019. He testified that the cervical spine aspect of Shipmon's work-related injury had resolved itself by the time of his first examination and Shipmon had not sustained any permanent impairment of his neck as a result of the work accident. Dr. Fedder did not take issue with Dr. Rodgers's use of Table 15-5 or the application of the DRE method. He did testify, however, that based on his examination, Shipmon did not meet any of the criteria of Category III.

(5) The Board found that Dr. Rodgers's testimony was not credible. In so finding, the Board took into account a number of factors, including the following. Dr. Rodgers relied in part upon an MRI that predated the work injury, but he did not compare the MRI that predated the work injury with one that was done after the work injury. In fact, he did not discuss the second MRI at all in his testimony. Dr. Fedder, by contrast, testified that there was no significant difference between the two MRIs. Dr. Kennedy Yalamanchili, a neurosurgeon that Shipmon was referred to by his primary care doctor, testified that any progression between the two MRIs was based on the natural history of degenerative disease, not trauma.

Another factor considered by the Board in assessing Dr. Rodgers's credibility was that Category III applies to a patient with significant signs of radiculopathy, such as pain and/or sensory loss, in a dermatomal distribution, loss of relevant reflexes, loss of muscle strength, or unilateral atrophy. The neurologic impairment may be verified by electrodiagnostic findings. Dr. Rodgers admitted, however, that Shipmon did not have any documented loss of muscle strength or unilateral atrophy. Another factor contemplated by the Board related to a pinched nerve in Shipmon's neck. Shipmon has a preexisting pinched nerve in his neck, but Dr. Rodgers showed no concern about the pinched nerve. Dr. Rodgers was also unwilling to consider placing Shipmon in a less severe Category. For these reasons, the Board rejected Dr. Rodgers's permanent impairment rating, finding that "[t]he reasons supporting his ratings are questionable and his actual rating appears to greatly overstate the degree of permanent impairment related to the work accident."[2] The Board then denied Shipmon's petition.

(6)     Shipmon appealed to the Superior Court, which affirmed the Board's decision.

(7)     Generally, this Court's review of an Industrial Accident Board decision is "limited to a determination of whether there is substantial evidence to support the

---

[2] Corrected Opening Br. Ex. B at 19.

Board's findings."[3]  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  On appeal, errors of law are reviewed *de novo*.[5]

(8)    Shipmon's first contention is that the Board erred by failing to award him "permanent partial impairment after determining that he suffered permanent limited function."[6]  This argument is based upon the following statements made by the Board in its decision: "The Board found Claimant highly credible.  He appears to have permanent limited function but minimally. . . . The Board accepts Claimant's testimony that as a result of the work-related neck injury, he has had to modify his body mechanics to some degree."[7]  These findings, Shipmon argues, require some award for permanent partial impairment under 19 *Del. C.* § 2326(g), which provides, in pertinent part, that "[t]he Board shall award proper and equitable compensation for the loss of . . . or loss of use of  any member or part of the body."  The Board rejected this argument by finding that "it is not only Claimant's burden of proving he is permanently impaired as a result of the work accident, but he has the burden of proving his permanent impairment is the degree he alleges as a result of the work

[3] *Betts v. Townsends, Inc.*, 765 A.2d 531, 533 (Del. 2000).
[4] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994) (internal quotation marks omitted).
[5] *Arrants v. Home Depot*, 65 A.3d 601, 605 (Del. 2013).
[6] Corrected Opening Br. at 9-12.
[7] Corrected Opening Br. Ex. B at 17.

accident – twenty-two percent."[8]

(9)　Shipmon relies, in part, on this Court's decision in *Turbitt v. Blue Hen Lines, Inc.,* wherein we stated, "[i]t is the duty of the Board, not a physician, to fix a percentage to a claimant's disability based on the evidence before it."[9]  In that case, the only medical testimony was from a doctor who testified that the claimant had a 34% permanent partial impairment of the spine.[10]  The Board, "relying primarily on its own experience in these matters"[11] rejected the doctor's testimony and found that the claimant's permanent partial impairment was 15%.  We reversed, reasoning that "[w]hatever 'institutional experience' or administrative expertise the Board possesses may be used as a tool for evaluating evidence but not a source for creating evidence."[12]  The case does not support Shipmon's proposition that the Board may assign a specific degree of permanent partial impairment based upon its own institutional experience in the absence of any evidence in the record to support such a finding.

(10)　Shipmon also relies, in part, on the Superior Court's decision in *Butler v. Ryder M.L.S.,* in which the court explained that the Board is responsible for "assign[ing] a percentage to the [claimant's] disability."[13]  In that case, Dr. Rodgers

---

[8] *Id*. at 17-18.
[9] 711 A.2d 1214, 1215 (Del. 1998).
[10] *Id.*
[11] *Id.*
[12] *Id.* at 1216.
[13] 1999 WL 167734, at *2 (Del. Super. Feb. 1, 1999).

testified that the claimant had a 20% permanent partial impairment to her lower right extremity.[14] He based his opinion on the *AMA Guides*, and in making his determination, considered the claimant's meniscectomy, mild arthritis, and chondromalacia.[15] Dr. Case testified that the claimant had a 9% permanency rating for all her injuries.[16] The Board found the testimony of Dr. Rodgers to be more credible than the testimony of Dr. Case, but also found that no assignment of impairment should be given based on the chondromalacia because it was no longer specifically mentioned in the most recent edition of the *AMA Guides*.[17] The claimant complained that the Board should "not have simply deferred to the AMA Guides."[18] From the Board's analysis, it appears that the Board's decision to award a 14% impairment was based upon the *AMA Guides* after removing the chondromalacia from consideration. It does not appear that the Board arbitrarily decided on an impairment rating or based a rating on its "institutional experience,"[19] with no evidence in the record to support its decision. This case does not help Shipmon.

(11) The Board is not required to, and should not, make a determination that a permanent partial impairment is of a certain degree when there is no evidence in the record to support that finding. Shipmon's first argument is therefore rejected.

---

[14] *Id.* at *1.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Turbitt v. Blue Hen Lines, Inc.,* 711 A.2d 1214, 1216 (Del. 1998).

(12) Shipmon's second contention is that the Board's decision is not supported by substantial evidence. The gist of this argument is that the there is not substantial evidence to support the Board's finding that Dr. Rodgers's medical opinions were not credible. However, the Board explained in some detail the evidentiary basis upon which it concluded that his medical opinions were not credible. The evidentiary factors the Board considered are summarized above. The testimony of Dr. Fedder and Dr. Yalamanchili provides substantial evidence to support the Board's denial of Shipmon's petition.

NOW, THEREFORE, it is the order of the Court that the judgment of the Superior Court is affirmed.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

8