IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ELZUFON, AUSTIN, TARLOV & MONDELL, P.A., | § § § | No. 47, 2023 |
| Employer Below, Appellant, | § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § | C.A. No. N22A-03-006 |
| DELISA LEWIS, | § § | |
| Claimant Below, Appellee. | § § § | |

Submitted: September 27, 2023
Decided: December 5, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **LEGROW**, Justices.

Upon appeal from the Superior Court of the State of Delaware. **AFFIRMED**.

Brandon R. Herling, Esquire, WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP, New Castle, Delaware, *for Appellant Elzufon, Austin, Tarlov & Mondell, P.A.*

Tabatha L. Castro, Esquire, THE CASTRO FIRM, INC., Newark, Delaware, *for Appellee DeLisa Lewis.*

**LEGROW**, Justice:

Elzufon, Austin, Tarlov & Mondell, P.A. ("Elzufon") appeals from a Superior Court Memorandum Opinion and Order affirming a decision of the Industrial Accident Board ("IAB" or the "Board"). The appellee, DeLisa Lewis, sustained a compensable work injury to her shoulder in 2016, for which she later underwent surgery. Elzufon and Lewis entered into an agreement under which Elzufon agreed to pay Lewis disfigurement benefits. Following her surgery, Lewis began experiencing neck pain for which she sought treatment. After her first treatment, however, Elzufon's workers' compensation carrier denied Lewis additional coverage relating to her neck.

Lewis petitioned the IAB for a determination of additional compensation due, arguing that her neck pain was causally related to the 2016 injury. In opposing the petition, Elzufon argued that Lewis's neck injury was not causally related to the 2016 injury and that, because it concerned a new injury, Lewis's petition was time-barred by a two-year statute of limitations. The IAB ruled in Lewis's favor, concluding that her spine injury was causally related to the 2016 injury and that her petition was timely. The Superior Court affirmed.

Elzufon argues on appeal that we should reverse on two grounds. First, Elzufon contends that Lewis's causation expert rendered an opinion that was entirely speculative and therefore did not constitute substantial evidence. Because Lewis did not introduce other causation evidence, Elzufon argues that we must reverse.

Second, Elzufon asserts that the IAB incorrectly applied a five-year statute of limitations and that Lewis's petition is time-barred under the appropriate two-year statute of limitations.

The record below shows that Lewis's expert's opinion was not speculative; that opinion therefore constituted substantial evidence. In addition, there is substantial evidence to support the IAB's determination that Lewis's petition was timely. We therefore affirm the Superior Court's judgment.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.     Lewis's Work Injury, Surgery, and Cervical Spine Treatment

Lewis had been working for Elzufon for almost 20 years when she began experiencing pain in her right shoulder in August 2016.[1] After Lewis reported the pain to Elzufon's human relations office, she was referred for chiropractic treatment.[2] In 2017, a nurse in the chiropractor's office advised Lewis to visit Dr. Eric Johnson, who diagnosed Lewis with bone spurs in the right shoulder and recommended surgery.[3] After a round of physical therapy, on June 15, 2018, Dr. Johnson performed surgery on Lewis's shoulder, which was followed by another round of physical therapy.[4]

---

[1] App. to Answering Br. at B56.
[2] Am. App. to Opening Br. at A11.
[3] *Id.*
[4] *Id.*

Lewis returned to work in September or October 2018.[5] Upon her return, she began experiencing neck problems,[6] along with continued right-hand numbness, tingling, and tightness.[7] When Lewis followed up with Dr. Johnson, he concluded that her right-shoulder problems were successfully treated but referred her to Dr. Newell for possible neck issues.[8]

Lewis sought treatment at First State Orthopedics for her neck beginning in February 2019.[9] On February 12, 2019, Lewis underwent an MRI.[10] The results of the MRI showed a disc osteophyte complex.[11]

Dr. Newell began treating Lewis on March 20, 2019.[12] During that visit, Dr. Newell prescribed further physical therapy.[13] Dr. Newell later testified that he was considering two potential diagnoses when he began treating Lewis: thoracic outlet syndrome and cervical radiculopathy.[14] To assist with the diagnosis, and to treat Lewis's symptoms, Dr. Newell recommended steroid epidural injections,[15] which he administered on April 8, 2019 and April 22, 2019.[16] Lewis reported having complete

---

[5] *Id.* at A12.
[6] *Id.*
[7] *Id.* at A11.
[8] *Id.*
[9] *Id.* at A8.
[10] *Id.* at A9.
[11] *Id.*
[12] *Id.* at A32.
[13] *Id.* at A11–12.
[14] *Id.* at A35–38.
[15] *Id.* at A11–12.
[16] *Id.* at A8.

relief after the injections, which Dr. Newell believed suggested a cervical radiculopathy.[17] Lewis's symptoms gradually returned after five or six months.[18]

After the first injection, Elzufon's workers' compensation carrier denied Lewis coverage for further medical treatment.[19] Lewis continued with physical therapy until it became cost prohibitive.[20]

In July 2019, the parties entered into an agreement for disfigurement benefits for "surgical scarring to the right upper extremity."[21] The agreement referenced the "cause of accident" as "repetitive use of the right arm" and the date of injury as August 29, 2016.[22] Under the agreement, Elzufon paid Lewis seven weeks of disfigurement benefits relating to her shoulder.[23] The record does not indicate when those payments were made.

Lewis visited Dr. Johnson again on January 8, 2020.[24] During that visit, Dr. Johnson "assessed a cervical radiculopathy and believed [Lewis's] neck and shoulder spasms were contributing to her symptoms."[25]

---

[17] *Id.*
[18] *Id.* at A12.
[19] *Id.*
[20] *Id.*
[21] *Id.* at A17.
[22] *Id.*
[23] *Id.* at A2.
[24] *Id.* at A19.
[25] *Id.*

On May 20, 2021, shortly after Lewis filed her Petition to Determine Additional Compensation Due (the "Petition") with the IAB, Lewis visited Dr. Newell.[26] During that visit, Lewis reported that her symptoms had improved after physical therapy but had never completely resolved.[27] She also reported that the symptoms were worsening and expressed interest in receiving the same injections that Dr. Newell prescribed two years earlier.[28] At the time of his deposition on January 13, 2022, Dr. Newell had not administered additional injections.[29]

## B.    The IAB Proceedings Below

On April 1, 2021, Lewis filed the Petition seeking further medical treatment for the cervical spine injury, which she claimed was causally related to her 2016 work injury.[30] Elzufon argued that any injury to Lewis's spine was not causally related to the 2016 injury.[31]

The IAB held a hearing on the Petition on January 31, 2022.[32] Before the IAB took testimony, Elzufon moved to dismiss the Petition, arguing that Lewis's cervical spine injury was unrelated to the 2016 injury and that her Petition was time-barred by a two-year statute of limitations.[33] After deliberating, but before hearing

---

[26] *Id.* at A9.
[27] *Id.*
[28] *Id.*
[29] *Id.* at A45–46.
[30] *Id.* at A2.
[31] *Id.*
[32] App. to Answering Br. at B43–77.
[33] *Id.* at B46–47.

5

testimony, the IAB denied the motion on the grounds that a five-year limitations period applied and that Lewis filed the Petition within five years of the alleged injury.[34] The IAB noted that it would provide additional rationale in its written decision.[35]

Dr. Newell testified by deposition on Lewis's behalf.[36] Lewis testified at the hearing.[37] Dr. Scott Rushton, an orthopedic spine surgeon who had previously evaluated Lewis, testified by deposition in support of Elzufon.[38]

Dr. Newell opined that Lewis's cervical spine problems were causally related to her 2016 work injury.[39] He diagnosed Lewis with cervical radiculopathy for which treatment was reasonable, necessary, and causally related to her prior work injury.[40] According to Dr. Newell, Lewis's neck problems, like many patients who undergo shoulder surgery, were an "indirect unfortunate consequence of being treated surgically."[41] Dr. Newell's opinion was partially based on the circumstances under which Lewis's spinal injury arose: she had not sustained an isolated injury to her cervical spine, and her complaints began after surgery.[42] In Dr. Newell's view,

---

[34] *Id.* at B48.
[35] *Id.*
[36] *Id.* at B48–56.
[37] *Id.* at B56–68.
[38] *Id.* at B69–72.
[39] Am. App. to Opening Br. at A7, A10.
[40] *Id.* at A7–8.
[41] *Id.* at A50.
[42] *Id.* at A51–52.

if Lewis had not sustained the shoulder injury, she would not have undergone the surgery that gave rise to her neck issues.[43]

Dr. Newell testified that, during his physical examination of Lewis, she demonstrated an abnormal reflex bilaterally, which can be normal, and that she had a positive Spurling's maneuver, which is typical of an injured or entrapped nerve of the neck.[44] Based on this information, Dr. Newell was considering diagnosing cervical radiculopathy affecting the right C6 nerve root between the fifth and sixth bones of the neck.[45] Dr. Newell testified that he therefore recommended epidural steroid injections to settle the nerve and to assist his diagnosis.[46] According to Dr. Newell, a successful injection would indicate a cervical radiculopathy.[47]

Dr. Newell testified that he reviewed a previous electromyography ("EMG") that was negative for signs of a pinched nerve in Lewis's arm or neck.[48] According to Dr. Newell, this was "fairly common" and often consistent with neck issues.[49] He testified that the negative findings were not inconsistent with a cervical radiculopathy because positive findings appear only in the most severe cases.[50]

---

[43] *Id.*
[44] *Id.* at A33.
[45] *Id.* at A33–34.
[46] *Id.*
[47] *Id.* at A35–36.
[48] *Id.* at A32–33.
[49] *Id.*
[50] *Id.* at A39–40.

Dr. Newell also acknowledged that the results of the February 12, 2019 MRI did not clearly show nerve compression or pinching.[51] But he stated that the MRI results showed a mild narrowing or "mechanical radiculopathy."[52] He testified that a mechanical radiculopathy is an injury, or aggravation of an injury, to a disc that causes inflammation, which can "biochemically" irritate a nearby nerve.[53]

Dr. Newell made several concessions on cross-examination.[54] Importantly for this appeal, Dr. Newell agreed that he did not have any "medical records" or "documents" to support his contention that the surgery caused a cervical radiculopathy.[55] He reiterated, however, that his assessment was based in part on the circumstances surrounding Lewis's complaints about her neck.[56]

Dr. Rushton disagreed that Lewis's neck injury was work-related and opined that her 2016 injury was an isolated right-shoulder injury for which surgery produced an excellent clinical outcome.[57] Dr. Rushton's opinion was largely based on the lack of objective evidence linking a cervical spine injury to the surgery or to repetitive work-related movement.[58] Specifically, Dr. Rushton stated that there is no support

---

[51] *Id.* at A36–38.
[52] *Id.*
[53] *Id.*
[54] *See id.* at A52–74.
[55] *Id.* at A72–74.
[56] *Id.* at A73 ("So it seems to me [the shoulder surgery is] the big dramatic event that took place around the time that her symptoms began.").
[57] *Id.* at A100–01.
[58] *Id.* at A96–103.

for a cervical radiculopathy diagnosis from an objective standpoint based on his evaluation of Lewis, the MRI and EMG reports, and her clinical complaints.[59] According to Dr. Rushton, the MRI report showing a disc osteophyte complex with mild to moderate central and foraminal narrowing was "relatively" normal.[60] Dr. Rushton also expressed a belief that the relief Lewis felt after the injections was due to a placebo effect.[61]

On cross-examination, Dr. Rushton acknowledged that he did not ask Lewis about any repetitive activities at work that might have caused her pain.[62] He conceded that he examined Lewis on only one occasion, more than two years before his deposition,[63] and he had not reviewed any updated treatment records other than Dr. Newell's deposition transcript.[64]

The IAB concluded that medical treatment to Lewis's neck was reasonable, necessary, and causally related to her 2016 injury.[65] The IAB found Dr. Newell's causation opinion to be more convincing than Dr. Rushton's opinion, based largely on the timing of Lewis's neck problems.[66] The IAB's written decision also addressed the reasoning underlying the Board's denial of Elzufon's motion to

---

[59] *Id.*
[60] *Id.* at A97.
[61] *Id.* at A97–99.
[62] *Id.* at A105–06.
[63] *Id.* at A106.
[64] *Id.*
[65] *Id.* at A17.
[66] *Id.* at A18.

dismiss. The written decision explained that the Petition was timely because Lewis filed it within five years of the 2016 injury, as required by 19 *Del. C.* § 2361(b).[67] In the alternative, the IAB explained, the Petition was timely under 19 *Del. C.* § 2361(a) because Lewis filed it within two years of the date on which the injury's "detrimental effect" manifested and Lewis, as a reasonable person, knew or should have known it was related to her employment.[68] That date, the IAB explained, was either January 8, 2020, when Dr. Johnson assessed Lewis for a cervical radiculopathy or on either of the dates of the two epidural injections— April 8, 2019 and April 22, 2019.[69]

## C. Elzufon Appeals to the Superior Court

Elzufon appealed the IAB's decision to the Superior Court, asserting two grounds for reversal. First, Elzufon argued that the IAB abused its discretion by accepting Dr. Newell's cervical radiculopathy diagnosis because it was not supported by documentary or objective medical evidence and therefore was not based on substantial evidence.[70] Second, Elzufon asserted that the IAB erred by denying the motion to dismiss because, according to Elzufon, the Petition was related to a new body part and therefore subject to Section 2361(a)'s two-year

---

[67] *Id.* at A21.
[68] *Id.* at A21–22.
[69] *Id.*
[70] Opening Br. Ex. A ("Superior Court Opinion") at 12.

limitations period.[71]   Elzufon argued that the limitations period began on March 19, 2019, when Dr. Newell diagnosed Lewis with a cervical radiculopathy.[72]

The Superior Court affirmed the IAB. First, the court held that the IAB's decision was based on substantial evidence.[73]   In the court's view, adopting Elzufon's position would require the court "to step outside of its proper role and re-weigh the evidence, and make its own credibility and factual findings."[74]   Second, the court held that the IAB's alternative rulings on Elzufon's motion to dismiss were legally correct.[75]   The court explained that, "[g]iven the [IAB's] finding that the cervical spine injury was causally related to the compensable injury," the IAB's holding that the Petition was timely under Section 2361(b)'s five-year limitations period was "manifestly correct."[76]   The court also held that the IAB's alternative holding was legally correct because Lewis filed her Petition within two years of when Dr. Johnson assessed a cervical radiculopathy and administered the two epidural injections.[77]

This appeal followed.

---

[71] *Id.* at 11–12.
[72] *Id.*
[73] *Id.* at 15–16.
[74] *Id.* at 16.
[75] *Id.* at 16–18.
[76] *Id.* at 16–17.
[77] *Id.* at 17–18.

## II.    STANDARD OF REVIEW

This Court's review of a Board decision is generally limited to determining "whether there is substantial evidence to support the Board's findings."[78] "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[79] "Weighing the evidence, determining the credibility of witnesses, and resolving any conflicts in the testimony are functions reserved exclusively to the Board."[80] On appeal, we review alleged errors of law *de novo*.[81]

## III.    ANALYSIS

Elzufon raises two issues in this appeal. First, Elzufon argues that the IAB's conclusion that Lewis's spinal injury was causally related to the 2016 injury was not based on substantial evidence.[82] According to Elzufon, Dr. Newell's opinion—which was the only causation evidence supporting Lewis's position—was "purely speculative in nature" and therefore did not constitute substantial evidence.[83] Second, Elzufon argues that the IAB should have dismissed the Petition as time-barred.[84] According to Elzufon, the Board should not have applied

---

[78] *Betts v. Townsends, Inc.*, 765 A.2d 531, 533 (Del. 2000).
[79] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994) (internal quotation marks omitted).
[80] *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013).
[81] *Arrants v. Home Depot*, 65 A.3d 601, 605 (Del. 2013).
[82] Opening Br. at 10–15.
[83] *Id.* at 12–13.
[84] *Id.* at 16–18.

12

Section 2361(b)'s five-year limitations period because that provision applies only when payments have been made in connection with an accepted injury.[85] Because Lewis's neck injury was not related to the 2016 injury, Elzufon argues, Section 2361(a)'s two-year limitations period governs the Petition's timeliness.[86] According to Elzufon, Lewis filed the Petition outside that two-year window because she had "actual notice" of a cervical radiculopathy diagnosis on March 20, 2019, when she first visited Dr. Newell, but waited until April 1, 2021 to file the Petition.[87]

## A.    Dr. Newell's expert opinion testimony constituted substantial evidence.

"[T]he IAB may adopt the opinion testimony of one expert over another; and that opinion, if adopted, will constitute substantial evidence for purposes of appellate review."[88] Elzufon stipulated to Dr. Newell's qualifications as a medical expert,[89] Dr. Newell testified in that capacity, and the IAB adopted Dr. Newell's opinion testimony.[90] Elzufon nevertheless contends that Dr. Newell's testimony does not constitute substantial evidence because his opinion was "purely speculative," citing Dr. Newell's admission that his opinion was not based on objective medical evidence or records.[91] Relying on the Superior Court's decision in *Hinckle v. Shorts*

---

[85] *See* Reply Br. at 7.
[86] *Id.*
[87] Opening Br. at 17–18.
[88] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).
[89] Am. App. to Opening Br. at A30.
[90] *See id.* at A18–19, A30.
[91] Opening Br. at 12–13.

*Enterprises, Inc.*,[92] Elzufon maintains that, given the speculative nature of Dr. Newell's opinion, the opinion "cannot 'constitute substantial evidence for purposes of appellate review.'"[93]

Dr. Newell's testimony does not resemble the testimony in *Hinckle*. The claimant in *Hinckle* sustained a compensable shoulder injury requiring surgery, which his employer agreed to compensate.[94] After his surgery, the claimant again began experiencing shoulder pain, which necessitated a second shoulder surgery.[95] After the second surgery, the claimant petitioned the IAB to determine additional compensation due, and the IAB denied the petition, finding that the second surgery was not related to the original work accident.[96] That finding was primarily based on the testimony of an orthopedic surgeon who examined the claimant.[97] Among other things, the surgeon "theorized that another accident could have caused" the claimant's second injury, but the surgeon "conceded that no evidence exist[ed] of such an accident."[98] On appeal, the Superior Court concluded that the surgeon's

---

[92] 2004 WL 1731142 (Del. Super. July 28, 2004).
[93] Opening Br. at 14 (quoting *Hinckle v. Shorts Enters., Inc.*, 2004 WL 1731142, at *3 (Del. Super. July 28, 2004)).
[94] *Hinckle*, 2004 WL 1731142, at *1.
[95] *Id.*
[96] *Id.* at *2.
[97] *Id.*
[98] *Id.* at *3.

hypothesis could not constitute substantial evidence because it amounted to speculation.[99]

Unlike the opinion in *Hinckle*, Dr. Newell's opinion was not based on hypothetical facts that lacked evidentiary support. Although Dr. Newell admitted that his opinion was not based on "objective" medical records,[100] that testimony does not make his opinion fatally speculative. Dr. Newell was Lewis's treating physician, and based on the timing of Lewis's neck problems, and Dr. Newell's familiarity with the complications that patients who undergo shoulder surgery confront, he deduced that the neck problems may have stemmed from the surgery. Based on that deduction, Dr. Newell administered injections, the results of which showed, in Dr. Newell's view, that Lewis experienced a cervical radiculopathy. Elzufon points to several inartful soundbites elicited at the end of Dr. Newell's deposition,[101] but a fair reading of his testimony shows that his opinion was not based on speculation. The Board's decision therefore was supported by substantial evidence.[102]

**B.      The IAB did not erroneously conclude that the Petition was timely.**

The IAB denied Elzufon's motion to dismiss, holding that the Petition was not time barred under two alternative provisions of 19 *Del. C.* § 2361. The primary

---

[99] *Id.*
[100] Opening Br. at 12–13.
[101] *See id.* at 7; Am. App. to Opening Br. at A72–74.
[102] *See Person-Gaines*, 981 A.2d at 1161; *Simmons v. Del. State Hosp.*, 660 A.2d 384, 388 (Del. 1995) ("It is entirely proper and appropriate for the Board to accept the medical testimony of one expert witness over that of another.").

15

basis for the IAB's ruling was that Lewis filed the Petition within the five-year

limitations period set forth in Section 2361(b).[103] In the alternative, the IAB

concluded that Lewis filed the Petition within the two-year limitations period set

forth in Section 2361(a) because the limitations period was tolled.[104] The Superior

Court agreed with both rulings.[105] Whether a statute of limitations bars a workers'

compensation benefits claim "is a mixed question of law and fact that requires the

Court to determine: (1) whether the IAB applied the correct legal standard and if so,

(2) whether the factual findings of the IAB were supported by substantial

evidence."[106]

We conclude that the IAB correctly applied Section 2361(b) and therefore do

not address its conclusions as to Section 2361(a). The five-year limitations period

in Section 2361(b) applies in cases where "payments of compensation have been

made . . . under an agreement approved by the Board or by an award of the Board."[107]

Section 2361(b) provides:

> Where payments of compensation have been made in any case under
> an agreement approved by the Board or by an award of the Board, no
> statute of limitation shall take effect until the expiration of 5 years from

---

[103] *See* Am. App. to Opening Br. at A21.
[104] *See id.* at A21–22.
[105] Superior Court Opinion at 16–17.
[106] *Pinnacle Foods v. Chandler*, 27 A.3d 552, 2011 WL 3586491, at *3 (Del. Aug. 16, 2011) (TABLE) (quoting *Smolka v. DaimlerChrysler Corp.*, 2004 WL 3958064, at *2 (Del. Super. July 13, 2004)).
[107] 19 *Del. C.* § 2361(b).

16

the time of the making of the last payment for which a proper receipt has been filed with the Department [of Labor].[108]

Elzufon contends that the five-year limitations period does not apply because there is not substantial evidence that the 2016 injury caused Lewis's neck injury at issue in the Petition.[109] In other words, Elzufon argues that Section 2361(b) applies only if Lewis's spinal injury relates to her earlier shoulder injury. And because those injuries are not related, Elzufon argues, the IAB should not have applied Section 2361(b)'s five-year limitations period. Elzufon does not otherwise challenge the IAB's ruling under Section 2361(b).

We already have concluded that the IAB's causation determination was based on substantial evidence. Accordingly, the IAB correctly applied Section 2361(b).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the Superior Court's January 10, 2023 Memorandum Opinion and Order.

---

[108] *Id.*
[109] Reply Br. at 7.